WIRT ADAMS, STATE REVENUE AGENT, *v*. J. M. A. BRENNAN
ET AL.

STATE REVENUE AGENT. *Assessment notice. To whom given. Act* 1894.

Under § 3, act 1894 (Laws, p. 29), the state revenue agent, in order to have property which has escaped taxation assessed, must, if the roll be in the hands of the assessor, give the requisite notice to that officer, not to the sheriff. In contemplation of law, the personal roll is, from February 1 until the first Monday in June, in the assessor's hands. Hence, between such dates notice to the tax collector is unauthorized, and an assessment made by him pursuant to such a notice is void.

FROM the chancery court of Warren county.

HON. CLAUDE PINTARD, Chancellor.

This is a suit in chancery by the state revenue agent against J. M. A. Brennan, tax collector of Warren county, and the sureties on his bond. The suit is based on the following clause of § 3 of the act of 1894 (Laws, p. 29): "If the tax collector shall fail or refuse to make an assessment, and report the same as herein required, he shall be liable on his bond for the amount of taxes properly collectible, and ten per cent. damages thereon."

In May, 1894, the revenue agent claiming that the Mississippi Home Insurance Company and the Vicksburg Bank had escaped taxation for the years 1886 to 1891 inclusive, gave notice in writing to the sheriff and tax collector to assess said corporations "by way of additional assessment on the roll or tax list in his hands." Thereupon the said tax collector entered on the personal assessment roll of 1893 an additional assessment of said bank and said insurance company in accordance with the notice. These concerns having refused to pay the taxes so assessed, and the tax collector having declined to enforce collection thereof, the revenue agent filed the bill in

this case against him and the sureties on his bond, and, after reciting the facts above mentioned, prayed for a decree for the amount of the state and county taxes properly due and collectible on the assessments. It is provided in § 3 of said act of 1894, that "if the assessment rolls be in the hands of the assessor at the time the revenue agent makes discovery of property which has escaped taxation, he shall give the required notice to the assessor, who shall make the assessment."

Defendants demurred, assigning, among other grounds, that when the notice was given the roll was in the hands of the assessor, and notice to the tax collector was unauthorized and his assessment void.

The demurrer was sustained and the bill dismissed, and plaintiff appeals.

*Calhoon & Green,* for appellant.

1. The fiscal years of the state are separate and distinct. From October 1, 1893, to October 1, 1894, was the fiscal year 1893. Code 1892, § 3794*a.* Between these dates the collector had in his hands the assessment roll for 1893 for the purpose of collecting all taxes thereby assessed, and adding to it all taxes that had escaped the assessor. Thus the rolls for previous years were in the hands of the tax collector within the meaning of our statutes.

2. Prior to July the assessor is preparing the roll for the fiscal year to begin the following October, but the roll is not required to be in any form. It does not become an assessment roll in any legal sense until approved by the board.

*Dabney & McCabe* and *Miller, Smith & Hirsh,* for appellees.

In May the roll was in the hands of the assessor, and not the tax collector. Hence, the notice to the latter was unauthorized and the assessment by him void. See § 3, act 1894, Laws, p. 29.

Argued orally by *M. Green,* for appellant.

WHITFIELD, J., delivered the opinion of the court.

The notice in this case was given by the appellant to the appellee, the tax collector, in May, 1894. A careful examination and comparison of the act of 1894 (Laws, p. 29), and of the provisions of chapter 116, code of 1892, make it clear that from the first day of February to the first Monday in June, the assessment rolls are, in contemplation of law, "in the hands of the assessor." The words "assessment rolls," in this connection, mean the rolls as they are in the assessor's hands while he is assessing, not the rolls as completed and approved by the board of supervisors. Such is their evident meaning, as shown by § 3751, code 1892, and the whole context. The construction which would make the words mean "assessment rolls" technically completed and approved within the meaning of the provisions of the law we are considering, is too strained, and results in confusion. As the "assessment rolls" thus defined in this connection were "in the hands of the assessor" in May, 1894, when the appellant "discovered the property which had escaped taxation," the notice should have been given to the assessor, wherefore the decree is

*Affirmed.*